UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL NO. 10-60-JJB

VERSUS

NNANTA FELIX NGARI, ET AL.

## RULING ON MOTIONS TO DISMISS AND MOTIONS FOR NEW TRIAL

Before the Court are motions to dismiss (Docs. 166, 169 & 174) and motions for new trial (Docs. 165, 168 & 173) filed by defendants Sofjan Lamid, Henry Jones and N. Felix Ngari. All three defendants were convicted of two counts of conspiracy-related charges regarding schemes to defraud Medicare and pay or receive health care kickbacks.

### I. Factual and Procedural History

On April 28, 2010, a grand jury indicted defendants on two counts of health care fraud charges. Count I charged each with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. Count II charged each with conspiracy to defraud the United States and pay and receive health care kickbacks in violation of 18 U.S.C. § 371.

The indictment was based on defendants' involvement with Unique Medical Solution, Inc. ("Unique"), a purported supplied of durable medical equipment in the Baton Rouge area. Unique specialized in providing power wheelchairs. Ngari owned and operated Unique, and he hired patient recruiters such as Jones[1] to recruit Medicare beneficiaries to receive medically unnecessary wheelchairs. Jones would recruit potential patients for health care fairs and direct them to physicians hired by the

---

[1] Another recruiter, Ernest Payne, was tried and convicted alongside the defendants, but he did not file for post-trial relief.

1

recruiters. Lamid was such a physician, and he conducted cursory exams of the beneficiaries and then wrote prescriptions for medically unnecessary wheelchairs. The recruiters would pay physicians like Lamid for their participation, then sell the beneficiary information—including patient names, prescriptions, and billing information—to Unique. Ngari would then submit fraudulent claims to Medicare. Unique submitted approximately $4.7 million in fraudulent claims to Medicare, and received approximately $2.5 million in Medicare payments.

The Court held a trial from August 1-16, 2011, and defendants were found guilty on both counts. At trial, the defendants collectively moved for a Rule 29 acquittal based on the insufficiency of the evidence. Defendants renew that motion in their briefs and also seek a new trial under Rule 33.

## II. Law and Analysis

Federal Rule of Criminal Procedure 29 provides that the court may reserve the decision on a defense motion for acquittal based on insufficiency of the evidence until after trial. Fed. Rule Crim. P. 29(b). When the jury returns a guilty verdict, a motion for acquittal cannot be granted "unless no rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *United States v. Block*, 635 F.3d 721, 723 (5th Cir. 2011) (citations and quotations omitted). At trial, "[a] jury may infer the elements of a conspiracy conviction from circumstantial evidence...." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1123 (5th Cir. 1997) (citation and quotations omitted). "It is the sole province of the jury, and not within the power of [the court], to

weigh conflicting evidence and evaluate the credibility of witnesses." *United States v. Ivey*, 949 F.2d 759, 767 (5th Cir. 1991) (citations omitted).

Rule 33 allow for the filing of a motion for new trial, and the court may vacate a jury verdict and order a new trial "if the interest of justice so requires." Fed. Rule. Crim. P. 33(a). The decision to grant a new trial is within the discretion of the trial court, which should be exercised with caution and invoked only in exceptional cases. *United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007).

### A. Motions to Dismiss by Lamid and Ngari

Lamid and Ngari both moved for acquittal under Rule 29 on similar grounds. They both assert the evidence was insufficient to show an agreement—and, hence, a conspiracy—existed to defraud Medicare or to pay and receive health care kickbacks. Specifically, Lamid argues he examined every patient he saw and did not write prescriptions to everyone who requested a power wheelchair. Ngari argues that he orally requested that every patient verify they saw a physician and received an exam. Ngari further argues that he had reason to think every prescription written was valid, and that even if some of them were medically unnecessary, he did not have knowledge of that fact.

The government presented testimony from beneficiaries who received medically unnecessary wheelchairs, as well as those beneficiaries' primary doctors. Testimony asserted that Lamid performed cursory examinations that took almost no time. Testimony was also presented that Lamid wrote prescriptions for power wheelchairs to the vast majority of the beneficiaries he saw. The jury also heard testimony regarding

3

payments Lamid received from Unique's patient recruiters, including Jones, for writing and delivering prescriptions to Unique to serve as the basis for Medicare claims.

Likewise, the jury heard testimony that Ngari was closely involved in the business details of Unique. He even personally delivered some of the power wheelchairs to beneficiaries, where he saw their personal conditions and the structure of their homes. In those instances, some beneficiaries were mobile and had homes not suitable for using a power wheelchair. The testimony therefore showed Ngari witnessed firsthand that the power wheelchairs were neither necessary for nor useful to the beneficiaries.

Viewed in the light most favorable to the government, the Court cannot accept that insufficient evidence existed to convict Lamid and Ngari. Sufficient evidence existed for the jury to infer the knowledge and agreement necessary to support a conspiracy conviction.

Lamid and Ngari also argue a different point—that the evidence of Lamid's prescriptions all occurred outside the five year statute of limitations period. They assert that since the evidence occurred outside that five year timeframe, it should not have been admitted. Once the evidence of Lamid's prescriptions is excluded, defendants argue the sole remaining testimony is not credible enough to sustain the conviction. Specifically, they attack the testimony of Bonnie Walker-Simmons, an unindicted co-conspirator who testified regarding prescriptions written by another doctor who was also an unindicted co-conspirator. The indictments were issued on April 28, 2010, thus requiring acts furthering the conspiracy to have occurred on or before April 28, 2005 in order for the prosecution to fall within the five year statute of limitations provided by 18 U.S.C. § 3282. *See United States v. Manges*, 110 F.3d 1162, 1170 (5th Cir. 1997).

For a number of reasons, defendants' argument lacks merit. First, while defendants assert the claims data from Unique ends on February 17, 2005, the government points out the billing records from Dr. Lamid himself reflect two patient visits occurring within the limitations period (*i.e.*, on or after April 28, 2005). Those two patients received power wheelchairs, and those visits were the only time for which Lamid billed Medicare for each individual.

Second, Lamid has never asserted he withdrew from the conspiracy, and all the government must prove is one overt act furthering the conspiracy during the limitations period. Thus, while defendants argue Lamid did not overtly act to further the conspiracy during the five year period leading up to the indictment, that alone would be insufficient to prove the conspiracy did not exist for the requisite five years prior to prosecution. "[M]ere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." *United States v. Torres*, 114 F.3d 520, 525 (5th Cir. 1997). "Ordinarily, a defendant is presumed to continue involvement in a conspiracy unless that defendant makes a substantial affirmative showing of withdrawal...." *United States v. Puig-Infante*, 19 F.3d 929, 945 (5th Cir. 1994) (internal quotation marks omitted). Defendants do not argue that *no* evidence of the conspiracy existed within the five year period. Indeed, the government charges several acts in the indictment which continued into 2007 and 2009, respectively, which are imputable to all the co-conspirators here.

Third, even if Lamid's billing information evidencing overt acts within the limitations period was ignored, evidence of his involvement in the conspiracy prior to April 2005 would still be admissible. "The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the

statute of limitations has no bearing on the admissibility of evidence." *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975).

Fourth, even if the defendants were correct that evidence of Lamid's prescriptions should be excluded, the verdict could still be supported. "[A] guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face." *Pena-Rodriguez*, 110 F.3d at 1123 (citation and quotations omitted). Thus, the testimony of Bonnie Walker-Simmons could not be said, purely as a matter of law, to have been an insufficient basis to establish the requisite elements to sustain the conviction. This basis of error also lacks merit.

For these reasons, the motions to dismiss filed by Ngari and Lamid must be denied.

B. Motion to Dismiss by Jones

Jones makes a much different argument in his motion. He asserts only that the second conspiracy count in the indictment impermissibly duplicated the first count. In support, Jones cites three cases as authority: *Braverman v. United States*, 317 U.S. 49 (1942); *United States v. Elam*, 678 F.2d 1234 (5th Cir. 1982); and *United States v. Richerson*, 833 F.2d 1147 (5th Cir. 1987). The government, however, correctly points out that those cases discuss the existence of multiple conspiracies punishable under a single criminal statute. The defendants in this case are charged with violating two different conspiracy statutes, not simply conspiring to violate numerous statutes which is only punishable under a single criminal conspiracy statute. The correct analysis is

governed by *Albernaz v. United States*, 450 U.S. 333 (1981) and *Blockburger v. United States*, 284 U.S. 299 (1932).

*Braverman* acknowledges this crucial difference. *See* 317 U.S. at 54 ("Since the single continuing agreement, which is the conspiracy here, thus embraces [multiple] criminal objects, *it differs from ... a single act which violates two statutes.*") (citing *Blockburger* as a distinguishing cases involving a different scenario) (emphasis added). *Braverman* concludes that the "single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.... For such a violation only the single penalty prescribed by the statute can be imposed." *Id.*

*Elam* and *Richerson* are to the same effect. The first sentence in *Elam* makes clear that defendants in that case were charged "in a single-count indictment ... with conspiring to import and to distribute imported marijuana...." 678 F.2d 1234, 1238. Similarly, *Richerson* involved a defendant who asserted a variance between the single-count conspiracy indictment and the proof at trial, which defendant asserted proved, if any, three conspiracies. 833 F.2d 1147, 1149.

The Supreme Court in *Albernaz* distinguished *Braverman*, finding that that case controlled only where a conspiracy violated a single statute. 450 U.S. 333, 339. The Court in *Albernaz* approved use of the *Blockburger* test where, absent contrary congressional intent, a single act or conspiracy violated multiple statutory provisions. *Id.* at 338-39. *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does not. *Id.* at 338 (quotations and citations omitted). The *Blockburger* test focuses on the statutory elements of the offense, not the overlap in the proof offered to establish the crimes. *Id.*

7

The two conspiracy statutes at issue in this case are 18 U.S.C. § 371 and 18 U.S.C. § 1349. Section 371 is a general criminal conspiracy statute, which provides in part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

Section 1349 punishes anyone who conspires to commit an offense under Chapter 63 of Title 18 of the United States Code when the commission of the offense was the object of the conspiracy. The United States in this case found the relevant offense which the defendants conspired under § 1349 to commit was a violation of 18 U.S.C. § 1347, the health care fraud statute.

Section 1347, in turn, punishes knowingly and willfully executing a scheme or artifice, in connection with the delivery of or payment for health care benefits, to either a) defraud any health care benefit program, or b) obtain by false or fraudulent pretenses or representations any money or property owned by any health care benefit program.

Under *Blockburger*, Section 371 requires proof of an overt act, while Section 1347 (and thus 1349) does not. Section 1347, meanwhile, through Section 1349, requires that the object of the conspiracy be to defraud a health care benefit program (like Medicare) and the conspiracy be achieved in connection with the payment for health care services (like power wheelchairs). Thus, each count requires proof of an element the other did not, thereby satisfying *Blockburger* and avoiding duplicitous

8

prosecution. Congress has expressed no intent to make prosecution under these two statutes mutually exclusive. Jones' motion to dismiss therefore has no merit.

C. Motions for New Trial

Lamid and Ngari again assert similar grounds for granting a new trial. In addition to the asserting the evidence of Dr. Lamid's prescriptions were introduced in violation of the statute of limitations—an argument the Court has already found meritless above—defendants essentially attack two separate actions of the Court: 1) admitting into evidence transcripts of grand jury testimony of Jones and Payne; and 2) admitting into evidence a wiretapped conversation between Jones and an unindicted co-conspirator and government informant, Bonnie Walker-Simmons. Jones argues for a new trial solely on the second point. The Court will treat each in turn.

*1. Did the Court Improperly Admit into Evidence Transcripts of the Grand Jury Testimony of Defendants Payne and Jones?*

Defendants Ngari and Lamid argue that the grand jury statements Payne and Jones provided were inadmissible hearsay because the statements did not come within the coconspirator exception to the hearsay rule. The government argues the grand jury transcripts were only admitted into evidence as against the defendant who made the testimony (*i.e.*, Payne's grand jury testimony was admitted as to Payne alone and Jones' grand jury testimony was admitted as to Jones alone). The government also argues that the transcripts were sanitized of reference to the other defendants and thus were not inculpatory statements against the other defendants.

At this juncture, the precise basis under which this evidence was admitted is immaterial. The evidence at issue—the government's exhibit numbers 27-A and 28—was completely sanitized of any mention of the other defendants. The grand jury

9

transcripts thus do not inculpate any defendant other than the defendant who made the grand jury testimony. The transcripts were admissible as to the government's case against Payne and Jones, respectively, as admissions of each. Because the government sanitized the evidence, it could not reasonably have been applied to the other defendants. Moreover, the court gave a limiting instruction to the jury specifically cautioning them to only consider evidence admissible against each defendant in determining the guilt or innocence of that defendant. Defendants' argument on this point has no merit.

Ngari and Lamid also argue their confrontation rights were violated because they had no opportunity to cross-examine Payne or Jones regarding their testimony. Under *Bruton v. United States*, 391 U.S. 123 (1968), "a defendant is deprived of his rights under the Confrontation Clause when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant." *United States v. Nutall*, 180 F.3d 182, 188 (5th Cir. 1999). The Fifth Circuit has held that "[c]ourts must exclude [out-of-court] confessions [by a co-defendant] only when they directly inculpate the complaining co-defendants, as well as the declarant." *United States v. Lewis*, 786 F.2d 1278, 1285 (5th Cir. 1986). Thus, "[a] codefendant's confession is admissible in a joint trial if references to the other codefendants are deleted." *Id.* (citation and quotations omitted). As discussed, both grand jury transcripts were completely sanitized of reference to the declarant's co-defendants. Neither Lamid nor Ngari were inculpated by either statement and thus neither had a right to confront the declarant. The grand jury transcripts were thus properly admitted.

Finally, Ngari and Lamid argue that the admission of these grand jury transcripts violated this Court's previous order that no Rule 404(b) extrinsic evidence of other bad acts relating to the indictments in similar cases would be admissible. As an initial matter, Ngari and Lamid may lack standing to contest this issue at all, since the government's sanitization of the transcripts could, at most, make them 404(b) evidence only for the person against whom they were admitted. *See United States v. Combs*, 191 Fed.Appx. 319, 320-21 (5th Cir. 2006) (noting without deciding that co-defendant may not have standing to challenge 404(b) evidence admitted against another co-defendant). However, even assuming they do have standing, both the sanitization and the limiting instruction given to the jury seriously undercut this contention. This argument therefore has no merit, and the Court concludes the admission of the grand jury transcripts was not erroneous.

> 2. *Did the Court Improperly Admit into Evidence the Audio and Transcript of the Wiretapped Conversation Between Bonnie-Walker Simmons and Henry Jones Dated June 10, 2005?*

All three defendants assert the Court improperly admitted the June 10, 2005 wiretapped conversation between Henry Jones and Bonnie Walker-Simmons, an unindicted coconspirator who turned into a government informant. The Court admitted this conversation pursuant to the coconspirator exception to the hearsay rule. Fed. Rule Evid. 801(d)(2)(E). Defendants advance five arguments for why a new trial should be granted based on the admission of this evidence.

First, defendants contend the evidence does not fall within the coconspirator exception to the hearsay rule. To prove the existence of a coconspirator statement, the government must show, by a preponderance, four elements: (1) the existence of a

conspiracy; (2) the statement was made by a co-conspirator; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. Fed. Rule Evid. 801(d)(2)(E); *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999). Defendants contend the conspiracy had ended by the time the conversation took place. However, this merely repeats the statute of limitations argument the Court has already found wanting. The conspiracy had not ended on June 21, 2005 because no one had withdrawn and Unique continued to submit fraudulent Medicare claims into 2009. Moreover, Dr. Lamid had not seen the last patient for which he fraudulently billed Medicare. Defendants also contend the statement did not take place in furtherance of the conspiracy. This is also a meritless argument, as numerous references to the primary actors and their activities are made.

Second, Jones contends this statement was in furtherance of a *different* conspiracy, which is the subject of another indictment in a different case. This too is immaterial because, as the Fifth Circuit has noted, "[t]he conspiracy that forms the basis for admitting coconspirators' statements need not be the same conspiracy for which the defendant is indicted." *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). That the conversation may have only been a mere narrative of past conduct relating to the indictment in this case, *United States v. Cornett*, 195 F.3d 776, 783-84 (5th Cir. 1999), does not matter, for purposes of the rule, if the statement did in fact further *another* conspiracy, provided the other elements are met as to that conspiracy. The Fifth Circuit has held that the furtherance requirement "is not to be construed too strictly lest the purpose of the exception be defeated." *Cornett*, 195 F.3d at 782 (citations omitted). Viewed in this light, the Court cannot say that the conversation was so

obviously related solely to an extrinsic conspiracy that it could not relate to and further the conspiracy which the defendants were convicted of. The conversation at issue touched on elements of both conspiracies. The Fifth Circuit has previously noted instances "where the evidence of [an extrinsic act] and the evidence of the crime charged are inextricably intertwined." *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982) (construing Fed. Rule Evid. 404(b) to not prohibit evidence which contains intertwined evidence of both the charged crime and an extrinsic act). The Court finds such an inextricable intertwining in this case and, for similar reasons to the court in *Torres* in the related 404(b) context, thus finds the conversation furthers the conspiracy charged in this case, even if it intertwined with the conspiracy charged in a different case as well.

Third, Lamid and Ngari argue they were deprived of their rights under the Confrontation Clause of the Sixth Amendment to confront and cross-examine Henry Jones regarding the subject matter of the wiretapped conversation. The defendants misconstrue the nature of the Confrontation Clause. Jurisprudence on this right requires that a statement be "testimonial" in nature in order to trigger confrontation rights. *See, e.g., Davis v. Washington*, 547 U.S. 813 (2006); *Crawford v. Washington*, 541 U.S. 36 (2004). An out-of-court statement is testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. Needless to say, the statements made by Jones to a co-conspirator who, unbeknownst to him, was secretly recording his conversation were not made by Jones with the reasonable belief that they would be used in a later trial. Jones' statements in that

regard were not testimonial for purposes of the Confrontation Clause, and therefore Lamid and Ngari cannot assert their confrontation rights regarding this testimony.

Fourth, defendants argue that the introduction of the evidence violated the Court's prohibition on Rule 404(b) character evidence of extrinsic bad acts related to the indictment in a related case—*United States v. Jones*, No. 10-cr-104—which is currently awaiting trial before this Court. As the Court mentioned above, this case presents a scenario where the conversation at issue was inextricably intertwined with both the charged crime and an extrinsic act. *Torres*, 685 F.2d at 924. The conversation at issue thus did not implicate Rule 404(b) because it formed an intrinsic part of the evidence showing the conspiracy for which defendants were indicted and convicted in this case.

Finally, defendants contend the introduction of this evidence unnecessarily confused the jury by suggesting Jones had a certain level of knowledge, which he used to become a durable medical equipment provider, that he lacked as a recruiter for Unique. The Court disagrees. The conversation took clearly took place within the timeframe of the conspiracy, and the jury was well-positioned to assign whatever weight to it they thought it merited. The government was entitled to use this evidence as it did, and defendants suffered no prejudice thereby.

In short, the Court finds no reason to overturn the jury verdict and compel a new trial.

## III. Conclusion; Order

Accordingly, the Court DENIES the motions to dismiss and motions for new trial.

Signed in Baton Rouge, Louisiana, on October 31, 2011.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**